| | | | |
|---|---|---|---|
| **Name of Assigned Judge or Magistrate Judge** | James F. Holderman | **Sitting Judge if Other than Assigned Judge** | |
| **CASE NUMBER** | 02 C 6541 | **DATE** | July 9, 2003 |
| **CASE TITLE** | M.J. ELECTRIC INC vs. INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 150 | | |

# United States District Court, Northern District of Illinois

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, plaintiff's motion for summary judgment is granted and defendant Local 150's motion for summary judgment is denied. The July 10, 2002, awards against plaintiff are declared null, void, and unenforceable. This action is dismissed in its entirety. Any pending motions are moot.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| ✓ | Notified counsel by telephone. |
| | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |
| JS6 | courtroom deputy's initials |

Date/time received in central Clerk's Office

Document Number: 57

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

M.J. Electric, Inc., a Delaware corporation, )
)
      Plaintiff, )
)
v. ) No. 02 C 6541
)
International Union of Operating Engineers, )
Local 150, an unincorporated association, )
)
      Defendant. )
)

MEMORANDUM OPINION AND ORDER

**DOCKETED JUL 1 0 2003**

JAMES F. HOLDERMAN, District Judge:

On September 13, 2002, M.J. Electric, Inc. ("MJ") filed a declaratory judgment action against International Union of Operating Engineers, Local 150 ("Local 150") seeking a declaration that two grievance awards that Local 150 obtained against MJ for alleged violations of a collective bargaining agreement are unenforceable and void. On May 29, 2003, pursuant to Federal Rule of Civil Procedure 56, MJ filed a motion for summary judgment. Local 150, on June 2, 2003, filed a cross-motion for summary judgment. Both motions have been fully briefed by counsel. For the reasons explained more fully below, MJ's motion is granted, and Local 150's motion is denied.

## STATEMENT OF FACTS[1]

Plaintiff MJ is an electrical contractor that performs electrical transmission and substation work. Defendant Local 150 is a labor organization representing heavy equipment operators in Illinois and parts of Indiana and Iowa. The issues in this case arise out of a job MJ subcontracted to perform on an electrical substation in Zion, Illinois. In early 2002, Local 150 filed two grievances against MJ alleging that MJ had violated the hiring hall and assignment of work provisions of the Illinois Building Agreement ("IBA"), one of two relevant collective bargaining agreements ("CBA") in this case.

The IBA was executed formally between Local 150 and the Mid-American Regional Bargaining Association ("MARBA") on behalf of its members, employer associations representing contractor-employers in the Chicago area. MJ is not a member of MARBA; however, MJ is a signatory to a memorandum of agreement that adopts the IBA.[2] The second CBA involved in this case is a separate, independent agreement executed between Local 150 and Excavators, Inc., an employer association that is not a member of the MARBA and is not a party to the IBA, known as the Excavators/Local 150 Heavy and Highway and Underground Agreement ("Excavators HHUA").[3]

---

[1] The Statement of Facts is derived from MJ's Local Rule 56.1 Statement of Uncontested Facts and Local 150's Response thereto and from Local 150's Statement of Uncontested Facts and MJ's Response thereto.

[2] In opposition to Local 150's motion for summary judgment, MJ argues that it is not bound by the IBA. However, even if this court accepts Local 150's contention that MJ is bound by the IBA (and MJ admits as much for purposes of its motion for summary judgment (Pl.'s Stmt. of Facts ¶ 14)), MJ still is entitled to summary judgment. Therefore, for purposes of this decision, it is undisputed that MJ is bound by the IBA.

[3] The parties dispute whether the MARBA/Local 150 Heavy and Highway and Underground Agreement is a separate agreement from the Excavators HHUA or simply a different characterization of the Excavators HHUA. Local 150 argues that the MARBA HHUA

MJ has not executed nor is it a signatory to any memorandum of agreement that adopts the Excavators HHUA. Both agreements have similar terms and call for a Joint Grievance Committee ("JGC") to resolve grievances under the agreements.

The IBA defines a "grievance" as "any claim or dispute involving an interpretation or application of the Agreement by an employee, or an Employer, or the Union, or the Association that one or the other of the aforesaid persons or organization is violating or had violated this Agreement." (Pl.'s Appx. in Support, Ex. 1 at 7.) The IBA goes on to state that "[t]he Union and Association have together created a Joint Grievance Committee to resolve grievances arising under this Agreement. The committee shall consist of an equal number of members representing Employers and the Union." (Id. at 8-9.)

The Excavators HHUA defines a "grievance" as "any claim or dispute involving an interpretation or application of the Agreement by an employee, or an Employer, or the Union, or the Association that one of the other of the aforesaid persons or organization is violating or has violated this Agreement." (Pl.'s Appx. in Support, Ex. 3 at 42.) At step three of the grievance procedure, like the IBA, "[t]he Union and Association have together created a Joint Grievance Committee to resolve grievances arising under this Agreement. This Committee shall consist of an equal number of members representing Employers and the Union." (Id. at 43-44.)

The IBA and the Excavators HHUA each contains an integration or "zipper" clause stating that the written agreement "represents the entire Agreement of the parties, it being understood that

---

and Excavators HHUA are the same agreements and refers to them as the Illinois Heavy and Highway and Underground Agreement ("IHHUA"). This distinction makes no difference in the outcome of this case, as the bottom line is that MJ is not bound by *any* HHUA. For purposes of this opinion, Excavators HHUA and IHHUA are synonymous, and this court will use "Excavators HHUA" to refer to these agreements.

there is no other Agreement or understanding, either oral or written." (Pl.'s Appx. in Support, Ex. 1 at 72; Pl.'s Appx. in Support, Ex. 3 at 79.)

In January and February of 2002, Local 150 filed two grievances alleging that MJ violated provisions of the IBA. After progressing through steps one and two of the grievance process without resolving the grievances, Local 150 requested a hearing before the JGC. On April 23, 2002, MJ and Local 150 appeared before the JGC, which members were comprised of five union representatives appointed by Local 150 and five employer representatives appointed by MARBA. Both sides presented arguments to the JGC. After MJ raised an issue regarding the JGC's jurisdiction to hear the grievances, the committee took the matters under advisement and sent a letter to the parties stating that the hearing would be "continued to the next session of the Joint Grievance Committee pending further investigation of the jurisdictional issue by the employer representatives of the Committee." (Pl.'s Appx. in Support, Ex. 14.)

On May 31, 2002, MARBA chairman David DiPaolo sent a letter to Local 150 stating that:

> MARBA's representatives on the Joint Grievance Committee will participate in grievances filed by or against contractors who are members of a MARBA member association. Non-member contractors who have grievances filed by or against them will be required to pay an administration fee of Five Hundred Dollars ($500.00) payable to the MARBA Joint Grievance Committee administrative account prior to the scheduling of a hearing before the MARBA-Local 150 Joint Grievance Committee. The MARBA members of the Joint Grievance Committee will not hear grievances involving non-members who have not paid the administrative fee.

(Def.'s Appx. in Support, Ex. P.) After this notice, Local 150 negotiated with another employer association, Excavators, Inc., to provide employer representatives who would not impose a fee for non-MARBA member grievances for a JGC. On July 10, 2002, a JGC comprised of five union representatives appointed by Local 150 and two employer representatives appointed by Excavators,

Inc. heard the grievances against MJ, which was not present at the hearing. MJ objected to this JGC's jurisdiction over it. This JGC proceeded in MJ's absence and sustained Local 150's grievances, finding that MJ had violated Article I, Section 8 and Article II, Section 7 of the IBA and issuing two awards in favor of Local 150 and against MJ of $140, 617.85 and $118, 995.36 in lost wages and benefits. MJ then filed this lawsuit seeking a declaration that these awards are unenforceable. Local 150 counterclaimed to enforce the awards.

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). It is not the function of this court to scour the record in search of evidence to defeat a motion for summary judgment; the nonmoving party must identify with reasonable particularity the evidence upon which that party relies. Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). The evidence relied upon must be competent evidence of a type otherwise admissible at trial. Id.

## ANALYSIS

Initially, Local 150 argues that this court cannot decide the issue at hand because MJ was required to present its procedural arbitrability challenge to the JGC directly. This court's disagrees with Local 150's characterization of the arbitrability question. MJ is not challenging the composition of the JGC or any other procedural matter; rather, it is challenging the jurisdiction of the JGC that rendered an award against it.[4] In fact, prior to the July 10, 2002, hearing, MJ objected to the HHUA Joint Committee's jurisdiction over it. (Pl.'s Appx. in Support, Ex. F.) The Supreme Court has made clear that courts resolve questions of arbitrability, such as a committee's jurisdiction over a party to render a binding award against it. Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 123 S. Ct. 588, 591 (2002) ("The question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the '*question of arbitrability*,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" (quoting AT&T Techs., Inc. v. Communications Workers, 475 U.S. 643, 649 (1986)) (emphasis in original)); see also IBEW Local #134 v. Chicago & N.E. Ill. Dist. Council of Carpenters, 149 F. Supp. 2d 452, 456-58 (N.D. Ill. 2001) (finding that courts determine whether a grievance committee has jurisdiction over a given dispute). This court is obligated to examine independently the issue regarding the JGC's jurisdiction

---

[4] For clarity, and to resolve an issue of great contention between the parties, this court agrees with MJ's reading and interpretation of the IBA and Excavators HHUA. As stated above, the IBA and Excavators HHUA each refer to a "Joint Grievance Committee." Local 150 argues that the JGC established by each CBA is actually the same committee, with the power to resolve disputes arising under both CBAs. MJ, conversely, contends that there are two separate committees, each constituted pursuant to each CBA. As will be explained in the text below, this court finds that two separate grievances committees are involved. Therefore, this court adopts MJ's nomenclature of "MARBA Joint Committee" to refer to the JGC established by the IBA and the "HHUA Joint Committee" to refer to the JGC established pursuant to the Excavators HHUA.

6

over MJ. Consequently, this court has jurisdiction to determine whether the HHUA Joint Committee had jurisdiction to render binding awards against MJ for violations of the IBA.

Based on the plain language of the IBA and Excavators HHUA, as well as past practices, this court is convinced that two separate committees were involved. Because MJ was not a signatory to, nor in any other way bound by, the Excavators HHUA,[5] the HHUA Joint Committee did not have the power to decide that MJ violated the IBA, a CBA the HHUA Joint Committee had no authority to interpret, and render an award in Local 150's favor. For the reasons stated below, this court rejects Local 150's argument that the JGC is one committee empowered to interpret both the IBA and the Excavators HHUA.

The IBA defines "Employer" as "present and future members of [MARBA's] Member Associations, and the individual members thereof individually and their successors and assigns . . . ." (Pl.'s Appx. in Support, Ex. 1 at 1.) The IBA then goes on to state that the JGC "shall consist of an equal number of members representing *Employers* and the Union." (Id. at 9 (emphasis added).) Local 150 states in its response to MJ's second set of interrogatories that because the JGC that rendered an award in Local 150's favor on July 10, 2002, consisted of members appointed by an employer association, namely Excavators, Inc., that JGC comported with the IBA. (Pl.'s Appx. in Support, Ex. 13, ¶ 1.) Local 150's reading of the IBA belies logic, not to mention the plain language of the agreement. "Employers" in Article II clearly is a term of art defined in the IBA Introduction clause quoted above. "Employers" in this context refers to the employer members of MARBA, not any entity that employs workers. Under Local 150's reading, *any* employer association could appoint

---

[5] The parties agree that MJ was not in any way bound by the Excavators HHUA. (Def.'s Resp. to Pl.'s Stmt. of Facts ¶ 16.) Therefore, any grievance committee established pursuant to the Excavators HHUA has no jurisdictional power over MJ.

7

members to the JGC. Thus, because the JGC that found MJ had violated the IBA consisted of members representing employers other than MARBA members, it had no power over MJ. See R.J. Distributing Co. v. Teamsters, Chauffeurs & Helpers Local #627, 771 F.2d 211, 214 (7th Cir. 1985) (holding that "only disputes between parties to the agreement, that is, the signatory companies and the Union in its capacity as representative of their employees, are arbitrable under the agreement.").

Moreover, the evidence in this case shows that, as MJ argues, two separate committees are, and must be, involved. First, the JGC convened on April 23, 2002, was co-chaired by employer representatives John Vignocchi and David Rock, of MARBA. (Pl.'s Appx. in Support, Ex. 4D.) However, the JGC which met on July 10, 2002, was co-chaired by employer representative Dave Snelton, of Excavators, Inc. (Pl.'s Appx. in Support, Ex. 9.) Second, both committees had different secretaries. (Pl.'s Appx. in Support, Ex. 4D & 9.) Third, in his letter to Local 150, MARBA chairman David DiPaolo, referred to the *MARBA* Joint Grievance Committee.[6] (Def.'s Appx. in Support, Ex P (emphasis added).) Fourth, the MARBA Joint Committee of April 23, 2002, never re-convened to adjudicate the merits of the grievance. Local 150 convened a new committee composed of employer members who were totally separate from the MARBA Joint Committee. (Pl.'s Appx. in Support, Ex. 12.) These undisputed facts, taken together, demonstrate that two committees, not one, as Local 150 contends, were involved in this case.

---

[6] If Local 150 was concerned with the unilaterally imposed $500.00 fee for grievances involving non-MARBA members, such as MJ, it should have taken this issue up with MARBA. In fact, it appears that MARBA would hear the two grievances at issue in this case without payment of the $500.00 fee. (Pl.'s Appx. in Support, Ex. 5C.) Local 150 did not have the authority simply to press its grievances against MJ to a committee without power over MJ or the IBA.

8

Further, the awards are unenforceable because, although the HHUA Joint Committee had the authority "to resolve grievances arising under *this* Agreement" (Pl.'s Appx. in Support, Ex. 3 at 43 (emphasis added)), i.e., *the Excavators HHUA*, the HHUA Joint Committee's awards are based exclusively on its findings that MJ violated *the IBA* (Id., Ex. 9). As made clear by the language of the Excavators HHUA, the HHUA Joint Committee had no authority to interpret the IBA and resolve disputes arising under the IBA. (See also id., Ex. 3 at 42 (defining "grievance" as "any claim or dispute involving an interpretation or application of the Agreement by an employee, or an Employer, or the Union, or the Association that one of the other of the aforesaid persons or organization is violating or has violated *this* Agreement.") (emphasis added).) Therefore, because the HHUA Joint Committee exceeded its contractually-delegated authority in finding MJ in violation of the IBA, a CBA the committee was not empowered to interpret, the awards are unenforceable and must be vacated.

Local 150 asks this court to consider the past practices with respect to the JGC. Local 150 attaches an affidavit from Local 150 recording-corresponding secretary Steven Cisco that states that historically the JGC has heard grievances arising under the IBA and Excavators HHUA. (Def.'s Appx. in Support, Ex. J at ¶ 4.) The zipper clauses of both the IBA and Excavators HHUA make clear that the written agreements "represent[] the entire Agreement of the parties, it being understood that there is no other Agreement or understanding, either oral or written." (Pl.'s Appx. in Support, Ex. 1 at 72; Pl.'s Appx. in Support, Ex. 3 at 79.) As discussed above, the written CBAs unambiguously create a system whereby the JGCs established under each CBA only can interpret and adjudicate grievances arising under their respective CBA. Both the IBA and Excavators HHUA explicitly limit the authority of their JGCs "to resolve grievances arising under *this* Agreement"

9

(Pl.'s Appx. in Support, Ex. 1 at 8-9; Pl.'s Appx. in Support, Ex. 3 at 43 (emphasis added)), i.e., the MARBA Joint Committee can resolve grievances under the IBA, and the HHUA Joint Committee has the authority to resolve grievances arising under the Excavators HHUA. The zipper clause prohibits evidence of some other oral agreement that gives the JGC authority over both CBAs that is inconsistent with the unambiguous language of the IBA and Excavators HHUA.[7]

Finally, the HHUA Joint Committee which met on July 10, 2002, did not, contrary to the IBA and Excavators HHUA, "consist of an equal number of members representing Employers and the Union." (Pl.'s Appx. in Support, Ex. 1 at 9; Pl.'s Appx. in Support, Ex. 3 at 43-44.) In response to MJ's first set of interrogatories, Local 150 identified five union representatives and two employer representatives "who were present at a hearing or meeting conducted on or about July 10, 2002 *regarding the grievances identified in paragraphs 20-21 of the Complaint* . . . ." (Pl.'s Appx. in Support, Ex. 12 (emphasis added).) Local 150 attempts to explain its response away by arguing that only two employer representatives and two union representatives voted on the grievances and the other union members did not participate. (Def.'s Response at 14-15.) This argument flies in the face of the plain language of the CBAs and Local 150's answers to interrogatories. The CBAs require that the JGC "consist" of an equal number of employer and union representatives, not that an equal number of employer and union representatives vote on the grievance. "Consist" is defined as "[t]o be made up or composed" and does not require voting authority. AMERICAN HERITAGE DICTIONARY

---

[7] As the Seventh Circuit has made clear in precedent affirming this court, such oral evidence of past practices also is prohibited by the parol evidence rule. Brooklyn Bagel Boys, Inc. v. Earthgrains Refrigerated Dough Prods., Inc., 212 F.3d 373, 380 (7th Cir. 2000) ("[T]he parol evidence rule generally forbids the use in evidence of a prior or contemporaneous agreement or terms not included in the Contract. . . . Notwithstanding the parol evidence rule, extrinsic evidence can be admitted to discover the parties' genuine intent when a contract is ambiguous . . . .").

10

313 (2d College ed. 1982). Moreover, Local 150 listed the five union members as being present when the grievance hearing or meeting identified in the complaint in this case, i.e., the two grievances at issue, were conducted. Local 150 cannot now argue that three of the members were not present at, i.e., not a part of, the July 10, 2002, grievances hearings involving MJ. Finally, Local 150, by failing to comply with the Local Rules of the Northern District of Illinois, has admitted that the July 10, 2002, JGC consisted of two employer representatives and five union representatives. In response to MJ's statement of facts paragraph 54, Local 150 states that it denies the paragraph but fails to cite to any factual record. Local Rule 56.1 requires that in the case of a disagreement with the movant's facts, the opposing party must cite to the specific section of the factual record establishing a dispute of fact. Local 150's general denial is insufficient, and the composition of the JGC is thus deemed admitted. Much v. Penn-America Ins. Co., 2002 WL 226867 *2 n.2 (N.D. Ill. Feb. 14, 2002) ("The Court will not consider unsupported statements of fact or general 'denials' that do not contain references to the factual record, as required by Local Rule 56.1(3). It is deemed as admitted all 56.1 responses which fall into this category." (citation omitted)).[8]

The plain language of the IBA and Excavators HHUA requires that grievances involving the IBA be submitted to the MARBA Joint Committee only. Local 150 presented grievances to a committee, the HHUA Joint Committee, that did not consist of an equal number of employer representatives appointed by MARBA and union representatives and exceeded the scope of its contractual authority by issuing awards based on a CBA, the IBA, that it had no authority to

---

[8] This court also has deemed admitted other paragraphs where Local 150 has failed to comply with the Local Rules and has not cited to the record in attempting to dispute MJ's Statement of Facts. (Def.'s Resp. to Pl.'s Stmt. of Facts ¶¶ 47, 54, 61, 63.) These relevant facts are included in this court's Statement of Facts above.

11

interpret. Because the HHUA Joint Committee was not established pursuant to the IBA and thus lacked any authority to interpret the IBA or to exercise jurisdiction over MJ, which is not a signatory to the Excavators HHUA, the awards are unenforceable. Therefore, this court must declare that the two awards rendered on July 10, 2002, by the HHUA Joint Committee are null, void, and otherwise unenforceable.

## CONCLUSION

For the above stated reasons, plaintiff M.J. Electric's motion for summary judgment is granted, and defendant Local 150's motion for summary judgment is denied.[9] The July 10, 2002, awards against plaintiff M.J. Electric are declared null, void, and unenforceable. This case is dismissed in its entirety. Any pending motions are moot.[10]

ENTER:

JAMES F. HOLDERMAN
United States District Judge

DATE: July 9, 2003

---

[9] In considering Local 150's motion for summary judgment, even if this court found that MJ, as a successor, is bound by the IBA and furthermore that MJ violated the IBA, Local 150 would not be entitled to judgment as a matter of law. The HHUA Joint Committee did not have the power to hear and decide the grievances brought pursuant to the IBA. Accordingly, Local 150's motion for summary judgment must be denied.

[10] On June 27, 2003, both MJ and Local 150 filed motions to strike. In crafting the statement of undisputed facts and in considering the evidence in this case, this court has considered only admissible evidence. Thus, both motions to strike are moot.